UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOXABL INC., )<br>)<br>    Plaintiff, )<br>v. )<br>)<br>YANNI TASSEV a/k/a IANI TASSEV )<br>)<br>    Defendant. ) | **VERIFIED COMPLAINT**<br><br>Civil Action No.: 1:23-cv-3531 |

### COMPLAINT

    Plaintiff, Boxabl Inc., hereby files this Complaint against the Defendant, Yanni Tassev a/k/a Iani Tassev, seeking injunctive and other relief, and in support hereof avers as follows:

### PARTIES

1.    Plaintiff, Boxabl Inc. ("Boxabl"), is a Nevada corporation and maintains its principal place of business at 5345 E. North Belt Road, North Las Vegas, Nevada 89115.

2.    Defendant, Yanni Tassev a/k/a Iani Tassev ("Tassev"), is an individual and based upon information and belief is a citizen of New York or a foreign country but has known to have resided in the past at 1832 127th, St College Point, New York 11356 and 15 Pond Dr., W, Rhinebeck, New York 12572.

### JURISDICTION AND VENUE

3.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331, in that this Complaint includes claims resulting from Defendant's violations of federal statutes, specifically the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§1030, *et seq*., and the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1831, *et seq*. This Court has jurisdiction over the remaining claims under 28 U.S.C § 1367(a).

4.      This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a), in that the Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

5.      Venue is proper in this Court under 28 U.S.C. § 1391(a) because based upon information and belief, a substantial part of the events or omissions giving rise to the claims herein are believed to have occurred in this District, including but not limited to through use of social media. In addition, one individual harmed by the alleged offending conduct detailed herein is a resident of New York.

## FACTUAL BACKGROUND

6.      This is a suit for breach of contract, violation of the CFAA, violation of the Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq.,* conversion, unjust enrichment, breach of the covenant of good faith and fair dealing, and Boxabl seeks a temporary and permanent injunction, amongst other relief, against its former employee, Defendant, Tassev, preventing him from continuing to disclose, disclosing and/or misusing corporate documents, data, confidential information, trade secrets and other valuable information and intellectual property stolen from Boxabl.

### Boxabl Proprietary Information

7.      Boxabl designs and manufactures accessory dwelling units, and provides innovative solutions to housing needs in commercial and residential settings. The designs and manufacturing processes for its products, including its flagship product – the "Casita" – are the result of extensive design and engineering research that set Boxabl apart in its industry, as no other company has designed and manufactured an accessory dwelling unit product at scale. Boxabl's design and manufacturing process information, as well as its investor list, represents

confidential information and trade secrets that Boxabl takes great care to protect. This is information that is not generally available to the public.

8. Paolo Tiramani ("P. Tiramani") is the Chief Executive Officer ("CEO") and a founder of Boxabl.

9. Galiano Tiramani ("G. Tiramani") is the Director of Marketing and a founder of Boxabl.

**Defendant Tassev's Work for Boxabl**

10. On July 6, 2021, Boxabl hired Tassev as an "efficiency specialist," pursuant to an employment agreement ("Employment Agreement") entered into between the parties on said date. (Ex. A).

11. The Employment Agreement addressed protection of Boxabl's Confidential Information, and Tassev agreed that, both during and after employment with Boxabl, he would not disclose without authorization any Confidential Information to any person, either directly or indirectly, nor use any Confidential Information for any purposes other than as authorized by and on behalf of Boxabl. (Ex. A, §4).

12. Per the Employment Agreement, Confidential Information includes but is not limited to: "…accounting data and procedures; client profiles and requirements; compensation plans and incentives; corporate policies; governmental relations; human resources policies and procedures; legal, regulatory, and insurance information pertaining to the activities of Employer; lists of prospective clients; management priorities; marketing materials, procedures, and tactics; pricing methodologies; relationships with other service providers; strategic and long term plans; training materials; vendor programs; and other information not generally available to the public..." (Ex. A, §4).

13. Per the Employment Agreement, Tassev expressly acknowledged that Boxabl expends substantial time, effort, and financial resources to develop the Confidential Information, to train employees to utilize such information, and to enable such employees to engender and promote personal working relationships with Boxabl's employees, clients, and potential clients. (Ex. A, §4).

14. Tassev further acknowledged in the Employment Agreement that if such information were to be used in competition with Boxabl, it would cause serious and irreparable financial and business damage to Boxabl. (Ex. A, §4).

15. Tassev further acknowledged in the Employment Agreement that all Confidential Information is confidential trade secret information that is proprietary to Boxabl. (Ex. A, §4).

16. Tassev further acknowledged that the restrictions on use of Confidential Information survive the termination of his employment with Boxabl. (Ex. A, §5).

17. Tassev further acknowledged in the Employment Agreement that breach of the Employment Agreement would cause irreparable harm to Boxabl and that such harm may not be compensable entirely with monetary damages. Tassev agreed that if he violated the Employment Agreement, Boxabl may seek injunctive relief and/or any other remedy allowed at law, in equity, or under the Employment Agreement, and that any injunctive relief sought by Boxabl shall be in addition to and not in limitation of any monetary relief or other remedies or rights to which Boxabl was or may be entitled at law, in equity, or under this Employment Agreement. (Ex. A, §8).

18. Tassev also executed a Confidentiality Agreement on February 2, 2022 (Ex. B), presenting substantially similar terms as to the prohibitions against unauthorized use of

Confidential Information, which Tassev again acknowledged the enforceability of in his Separation Agreement (Ex. C) on January 13, 2023.

19. Boxabl terminated Tassev on January 13, 2023 for cause.

**Boxabl's Confidential Information and Defendant's Unauthorized Actions**

20. Boxabl's Investor Relations Manager received an email from a purported Boxabl investor on March 6, 2023, regarding a document that purported to reflect a "transfer" of shares of Boxabl stock from Tassev to the investor in exchange for money. Boxabl contacted Tassev concerning this irregularity. Tassev declined to discuss it or acknowledge details of it.

21. After this phone call, Tassev contacted the investor at issue and informed them that Boxabl would issue them the applicable stock certificates.

22. On March 8, 2023, the investor at issue sent Boxabl an email that reflected his wire confirmation to a bank that Tassev instructed the investor to wire funds to for the purported shares of Boxabl stock. Boxabl asked the investor to send her all emails by and between the investor and Tassev concerning the claimed transfer of Boxabl stock. In response, the investor sent over text messages by and between the investor and Tassev that reflected Tassev's known personal information, as well as his personal bank information, as well as Tassev's personal email address: yanni@3nerji.com.

23. P. Tiramani and G. Tiramani were made aware of the claimed transfer, and an investigation was conducted. It was determined that the transfer document for the stock at issue was an actual Boxabl template stolen by Tassev and utilized by Tassev to fraudulently sell what purported to be Boxabl stock to purported, actual, or would-be investors.

24. That day, G. Tiramani contacted Tassev to address these discoveries. The conversation took place through text messages. (Ex. D).

25.     G. Tiramani contacted Tassev to obtain information about the number and types of stock involved, to determine the amount of money in question, to identify the number and names of investors who appeared to have been defrauded by Tassev, to discover the number and identity of any individuals assisting Tassev in committing these acts, and to learn how the funds were transferred to Tassev from the purportedly defrauded investors.

26.     As a product of G. Tiramani's communications with Tassev, it appears ten purported Boxabl investors were defrauded out of over $1,000,000 by Tassev. One of the ten purported Boxabl investors is a resident of New York.

27.     Tassev forged and exchanged unregistered exempt purported Boxabl stocks via email to the purported unsuspecting investors by having each wire funds to his private bank accounts. Tassev sold these forged shares online through social media, at a price lower than would otherwise be available.

28.     In the text messages with G. Tiramani referenced above, Tassev admitted to the fraudulent transfers of purported Boxabl stock, stating that he was embarrassed, and that there was no excuse for his conduct. (Ex. D).

29.     In contacting these purported investors and providing them with actual Boxabl template stock transfer documents, Tassev utilized Confidential Information and materials from Boxabl for his own personal purposes, without authorization by Boxabl.

30.     Upon information and belief, Tassev befriended some number of investors and told them that as an early employee of Boxabl following its founding, he had many shares in Boxabl that he would sell at 1/10 of the price shares were being offered by Boxabl, and instructed the purported interested investors who responded to wire funds to a limited liability company Tassev created and controlled.

31.     Based upon Boxabl's records, Tassev had no such shares to sell.

32.     Upon information and belief, Tassev created a Facebook group to disparage Boxabl through the spreading of negative, false, and misleading information. Tassev emailed individuals included on a list of employees and investors he misappropriated from Boxabl while an employee, without Boxabl's knowledge or authorization to retain or utilize that list of individuals for any purpose, and invited said individuals to join the aforementioned Facebook group.

33.     Upon receiving and evaluating this information, Boxabl reported all such conduct to the Federal Bureau of Investigation.

34.     Boxabl has attempted to continue addressing this conduct with Tassev, so to undo the harm he has caused to the purported investors he defrauded, to no avail.

35.     As a result of Tassev's offending conduct, as described herein and in the materials attached, Boxabl has suffered irreparable harm and damages, including but not limited to, harm and damage to Boxabl's brand and reputation in the public's eye and in the estimation of its investors, monetary harm, and harm to and loss of Confidential Information and trade secrets.

36.     Upon information and belief, Tassev is continuing to offer fraudulent Boxabl shares through social media groups, and as such, Boxabl stands likely to suffer additional, irreparable harm if Tassev is allowed to continue to engage in the offending acts described herein.

## COUNT I – BREACH OF CONTRACT

37.     Paragraphs 1 through 37 of the Complaint are incorporated here by reference.

38.     Tassev has breached the Employment Agreement, Confidentiality Agreement, and Severance Agreement by, *inter alia*, divulging confidential and proprietary information as stated herein, as well as using said information and materials for his own personal benefit, and without authorization from Boxabl.

39.     There has been no prior breach by Boxabl.

40.     Boxabl has fully honored and performed its obligations under the Employment

Agreement, Confidentiality Agreement, and Severance Agreement, and has satisfied all

conditions precedent to their enforcement.

41.     As a direct result of Tassev's breach and/or likely breaches of the Employment

Agreement, Confidentiality Agreement, and Severance Agreement, Tassev has caused and/or

will inevitably cause Boxabl irreparable harm consisting of the loss of business, potential

business, client and contractor goodwill, the compromise of Boxabl's trade secrets and/or

confidential and proprietary information, and compromise of Boxabl's competitive advantages

in its industry.

42.     Tassev continues to and/or threatens to breach his legal and contractual obligations owed

to Boxabl and inflict and/or threaten to inflict upon Boxabl the irreparable harm, injury, and

damage described herein.

## COUNT II – VIOLATION OF COMPUTER FRAUD & ABUSE ACT, 18 U.S.C. § 1030, *et seq.*

43.     Paragraphs 1 through 43 of the Complaint are incorporated here by reference.

44.     In violation of 18 U.S.C. §§ 1030(a)(2)(C) and (a)(4), which are actionable civilly

pursuant to 18 U.S.C. §1030(g), Tassev intentionally and deceptively accessed Boxabl's

confidential, proprietary, and trade secret information on computer systems belonging to Boxabl

for the express and unauthorized purpose of accessing, obtaining, downloading, and/or retaining

such information.

45.     Tassev's accessing of Boxabl's information for the purpose of accessing, securing, and

transmitting Boxabl's confidential, proprietary, and trade secret information was unauthorized by

Boxabl and/or exceeded the scope of Tassev's authorization; was contrary to the Employment

Agreement, Confidentiality Agreement, and Severance Agreement; and was done for the benefit of Tassev. Tassev acted with no business purpose that could possibly benefit Boxabl.

46.     Tassev's access, use, and/or transmission of much of this information was entirely unauthorized and/or exceeded the scope of his authorization, and was detrimental and contrary to any legitimate business purpose of Boxabl.

47.     The computer and/or computer systems intentionally accessed and used by Boxabl were "protected computers" within the meaning of 10 U.S.C. § 1030, *et seq.*, because they were used in interstate commerce and communication, including, but not limited to, for communicating and maintaining information regarding numerous customers and/or customer locations with which Boxabl was engaged in interstate commerce. Tassev downloaded, retained, and/or transmitted the information without authorization, and that information was transmitted from and through an email and/or computer system that caused the interstate transmission and communication of said information.

48.     Tassev's actions were intentional and were taken deliberately, maliciously, wantonly, fraudulently, deceptively, and/or with reckless and deliberate disregard for Boxabl's lawful rights, and without privilege or justification.

49.     Tassev's unauthorized access of Boxabl's computer and computer systems for the purposes of taking and transmitting Boxabl's trade secrets and/or confidential and proprietary information has caused and/or will cause Boxabl significant losses, far in excess of the jurisdictional minimum established by the CFAA.

50.     As a result of Tassev's unauthorized access of Boxabl's computer and computer systems, Boxabl has had to expend costs far exceeding $5,000 by undoing the monetary damage caused to Boxabl investors by Tassev's offending conduct described herein.

## COUNT III – VIOLATION OF
## DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1831, *et seq.*

51. Paragraphs 1 through 51 of the Complaint are incorporated here by reference.

52. Boxabl protects research, manufacturing processes, and customer and investor lists, and the data and documents related thereto, as trade secrets, as defined by 18 U.S.C. §1839(3).

53. Boxabl has invested significant time, effort, resources, and money in developing this information, which provides Boxabl with significant and valuable business advantages.

54. Such trade secrets and confidential information constitute valuable information not available to others through publicly available sources, and are important to Boxabl in the conduct of its business thereby entitling Boxabl to the use and enjoyment of such trade secrets.

55. Such trade secrets and confidential information are utilized by Boxabl for use in interstate commerce.

56. Boxabl has taken reasonable measures to protect its confidential and trade secret information, including, but not limited to, its utilization of procedures to restrict access to this information.

57. Tassev occupied a position of fiduciary trust and confidence, and such trade secrets were communicated to and otherwise accessible to Tassev during his work for Boxabl, thereby making it unjust to permit Tassev to use or disclose of such trade secrets.

58. Notwithstanding his contractual, fiduciary, and common law obligations, Tassev will actually and/or inevitably misappropriate, use, and/or disclose such information in a manner that will cause harm to Boxabl.

59. As a direct result of Tassev's actual and/or inevitable misappropriation of such information, Boxabl will suffer irreparable harm.

## COUNT IV – CONVERSION

60. Paragraphs 1 through 60 of the Complaint are incorporated herein by reference.

61. The confidential, proprietary and trade secret information were and are the rightful property of Boxabl, which held valid and exclusive title to all such property, and is exclusively entitled to possession of such property.

62. By wrongfully misappropriating Boxabl's confidential, proprietary and trade secret information, Tassev has intentionally interfered with Boxabl's property rights by wrongfully exercising dominion and control over the information, and have deprived Boxabl of the exclusive possession or use of such information.

63. Boxabl's wrongful misappropriation constitutes the tort of conversion, which has proximately caused damages to Boxabl.

## COUNT V - UNJUST ENRICHMENT

64. Paragraphs 1 through 64 of the Complaint are incorporated here by reference.

65. Payment by investors to Tassev for the fraudulent stock transfers described herein, and Boxabl's subsequent efforts to undo the financial harm Tassev caused to said investors, constitutes a benefit to Tassev.

66. Boxabl making payments to, or otherwise undoing the financial harm caused by Tassev to the investors referenced herein, based upon Tassev's offending conduct, caused and continues to cause a harm to Boxabl. These payments constitute a detriment to Boxabl.

## COUNT VI - BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

67. Paragraphs 1 through 67 of the Complaint are incorporated here by reference.

68. The Employment Agreement contained an implied covenant of good faith and fair dealing.

69.     The foregoing actions of Tassev have been in furtherance of an improper motive and dishonest purpose, constitute bad faith, were unreasonable, outrageous and malicious and violate the covenant of good faith and fair dealing implied in the Employment Agreement.

70.     As a result of Tassev's conduct, Boxabl has incurred and will continue to incur, substantial harm and damages.

### COUNT VII – DEMAND FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF

71.     Paragraphs 1 through 70 of the Complaint are incorporated herein by reference.

72.     Tassev's violations of law as set forth above, misrepresentations and violation of the Employment Agreement, Confidentiality Agreement, and Severance Agreement, has caused, and will continue to cause, irreparable and immediate injury, loss and damage to Boxabl, for which it has no adequate remedy at law.

73.     Tassev expressly acknowledges his wrongdoing in his text messages with G. Tiramani. (Ex. D).

74.     Boxabl thus specifically prays that it receive injunctive relief, both in the form of a temporary restraining order, and a temporary and permanent injunction:

   A.    Enjoining Tassev from removing, using or destroying any information obtained by Tassev from Boxabl or work done by Boxabl;

   B.    Ordering Tassev to turn over to Boxabl any and all devices to which he copied Boxabl confidential, trade secret and/or proprietary information or other Boxabl data and to turn over any and all copies of all such information or other data that Tassev removed from Boxabl;

   C.    Ordering Tassev from further utilizing, disclosing or revealing any of Boxabl's information, confidential documents or data.

  D. Enjoining Tassev from using or disclosing Boxabl's trade secrets or proprietary and confidential information to the benefit of anyone other than Boxabl; and

  E. Ordering the creation of a constructive trust on all of Tassev's improper earnings, and unjust enrichment resulting from Tassev's wrongful use and/or disclosure of Boxabl's confidential and trade secret information.

  F. Enjoining Tassev from making any posts on social media that include any information about Boxabl, its personal, its products, its operations, its finances, its investors, its customers, or any other facts concerning Boxabl.

  G. Enjoining Tassev from selling, or attempting to sell, real or fake shares of Boxabl stock.

  H. Freezing the bank accounts of Sigmas Power Trust and Sigmas Power, LLC, pending this court's action on Plaintiff's forthcoming motion for a preliminary injunction.

## **PRAYER FOR RELIEF**

  **WHEREFORE**, the Plaintiff, Boxabl Inc., demands judgment in its favor and against the Defendant Yanni Tassev a/k/a Iani Tassev, and respectfully requests the following relief:

  A. Temporary, preliminary, and permanent injunctive relief, as set forth more specifically above in Paragraph 76 (A)-(H), prohibiting Tassev from using or disclosing Boxabl's trade secrets or proprietary and confidential information to the benefit of anyone other than Boxabl;

  B. Other equitable relief, including without limitation a constructive trust on all of Tassev's improper earnings, and unjust enrichment resulting from Tassev's wrongful use and/or disclosure of Boxabl's confidential and trade secret information;

C.    Any actual damages, to the extent such damages are capable of being calculated, that Boxabl is entitled to recover as a result of Tassev's actions as set forth above;

D.    Attorneys' fees pursuant to the Employment Agreement, Confidentiality Agreement, and Severance Agreement;

E.    Common law interest;

F.    Punitive Damages;

G.    The costs and fees of these proceedings; and

H.    All such other relief as this Court deems appropriate, including, without limitation, attorneys' fees.

Respectfully submitted,

By: /s/ *Peter E. Strniste, Jr.*
Peter E. Strniste, Jr., Esq.
Gordon Rees Scully Mansukhani LLP
One Battery Park Plaza, 28th Floor
New York, NY 10004

Counsel for the Plaintiff, Boxabl Inc.

## VERIFICATION

I, Paolo Tiramani, am the President of Boxabl Inc. ("Boxabl"). I have read the foregoing Verified Complaint and know the contents thereof and state the allegations are true. I base this Verification on my own personal knowledge, except as to matters therein stated to be alleged upon information and belief and, as to those matters, I believe them to be true. The grounds of my knowledge, information, and belief are derived from my position as President of Boxabl, my personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of Boxabl's records and conversations with Boxabl's employees.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Paolo Tiramani

Executed on the ___25___ day of April, 2023.